IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT KANSAS

| | |
|---|---|
| GREGORY SANCHEZ,       )<br>                                              )<br>              Plaintiff,        )<br>                                              )<br>vs.                                         )<br>                                              )<br>ALCON VISION L.L.C.,      )<br>**Serve Registered Agent:**  )<br>    Corporation Service Company  )<br>    300 Deschutes Way Sw  )<br>    Ste 208 Mc-Csc1            )<br>    Tumwater, WA 98501     )<br>                                              )<br>              Defendant.     ) | Case No. _____ |

## **COMPLAINT**

Plaintiff Gregory Sanchez, by and through counsel, and for his causes of action against Defendant Alcon Vision LLC ("Alcon"), states and alleges as follows:

## **PARTIES**

1. Plaintiff Gregory Sanchez is an individual residing at 21008 W 81st Place, Lenexa, Kansas 66220, and he was an employee of Defendant for over ten years until his wrongful termination effective on or about July 8, 2021. Plaintiff is a 64-year-old, Roman Catholic of Mexican descent.

2. Defendant Alcon is a foreign for-profit limited liability company organized and existing under the laws of the State of Delaware, with their principal headquarters in the State of Texas, and doing business in the State of Kansas where it sells various Ophthalmic supplies.

3. All of the acts, conduct, and omissions of Defendant were performed by its agents, representatives, and employees while in the course and scope of their agency or employment.

1

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as the acts complained of involve violations of Plaintiff's rights under federal statutes, specifically the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

5. Venue is proper within this District pursuant to 28 U.S.C. § 1391 because Defendant resides in the District, and the acts, transactions and events complained of herein and giving rise to Plaintiff's claims occurred in the District.

## FACTUAL ALLEGATIONS

6. Plaintiff was employed by Defendant for just over ten (10) years including in his final position as Senior Division Manager, until his wrongful termination on or about July 8, 2021.

7. At all times herein mentioned, Plaintiff was an "employee" of Defendant, within the meaning of the Title VII and ADEA, and is entitled to all the benefits and protections of those laws.

8. Defendant was an "employer" of Plaintiff within the meaning of Title VII and the ADEA.

9. Throughout his employment with Defendant, Plaintiff was subject to the control of Defendant as to the means and manner of accomplishing his work as an employee.

10. Defendant is engaged in an industry affecting commerce and upon information and belief it has employed 500 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

11. Throughout his 10 years of employment with Defendant, Plaintiff performed all duties of his job as required, exceeded the expectations of his position, and received praise, raises, commendations, certifications, awards and excellent reviews for his work. Even after his unlawful termination on or about July 8, 2021, Plaintiff continued to receive praise, commendations, certifications, and awards based on his sales work.

12. Plaintiff was a successful and valued employee of Defendant for over a decade.

13. Plaintiff is a 64-year-old male Roman Catholic male of Mexican descent.

14. Prior to and including his wrongful termination, Plaintiff experienced a pattern and practice of disparate treatment in the terms and conditions of his employment in the form of a discriminatory, hostile work environment, a false allegation of sexual harassment, a sham investigation of the allegations against him, and his forced, involuntary termination due to his age, religion, national origin and/or retaliation by Defendant and its officers and managers, including but not limited to Plaintiff's direct supervisors.

15. Plaintiff was also subjected to retaliation for his complaints to Defendant's Human Resources department about illegal discrimination.

16. Plaintiff expressed his objections to this illegal and discriminatory treatment; however, he continued to be subjected to discriminatory treatment in the form of a forced termination.

17. On information and belief, Plaintiff was replaced with a less-qualified, substantially younger employee.

18. Plaintiff's treatment is representative of the type of discriminatory and retaliatory treatment that Defendant engages in against older, minority employees in favor of younger, Caucasian, less qualified employees.

19. Defendant engages in a broad-based pattern of discrimination and retaliation in the terms and conditions of employment including in the form of a hostile work environment and adverse employment decisions with respect to discipline and firing against employees in protected classes who are similarly situated to Plaintiff.

20. In approximately May 2021, Plaintiff was falsely accused of "sexual harassment" by one of his former subordinates.

21. Plaintiff participated in good faith in Defendant's subsequent "investigation" of the allegations despite the fact that a number of discriminatory, harassing, inappropriate and bigoted comments regarding Plaintiff's faith laced the claims against him.

22. Despite being cleared of all false allegations of sexual harassment, Defendant's human resources department continued to investigate Plaintiff for certain unrelated, purportedly "inappropriate" actions regarding internal "field-coaching reports" Plaintiff was tasked with preparing for sales representatives under his direct supervision.

23. After Plaintiff received word he was the subject of an ongoing investigation based on a small number of field-coaching reports, Plaintiff contacted his direct supervisor, Kevin Stiner, and was assured any unintentional violations by Plaintiff regarding such field-coaching reports were not serious and coached regarding how to avoid such allegations or issues in the future.

24. Plaintiff accepted such coaching from Mr. Stiner and was confident the issue was behind him.

25. Instead, Defendant's human resources department continued to escalate the issue and investigate Plaintiff's alleged conduct in completing his employees' field-coaching reports.

26. Knowing that Plaintiff's alleged inappropriate conduct in the completion of his field-coaching reports was commonplace among other younger, Caucasian Division Managers and

4

Sales Managers, and knowing that such younger, Caucasian Division Managers and Sales Managers, on or about July 6, 2021, Plaintiff filed a report of discrimination based on his age, national origin, and religion via Defendant's internal human resources complaint line.

27. Within hours, Plaintiff received a telephone call from one of Defendant's human resources investigators.

28. During this call, Plaintiff complained that he was receiving disproportionate scrutiny in the form of a sham investigation for conduct that was common among Defendant's younger, Caucasian Division Manager and Senior Division Managers.

29. Indeed, Plaintiff explained that similarly situated employees openly bragged about falsifying, ignoring, or otherwise disrespecting the field-coaching report process and that this *laissez faire* attitude among similarly situated, younger, Caucasian employees had seeped into Plaintiff's training regarding field-coaching reports.

30. Plaintiff clearly expressed that he believed his age and national origin were affecting the severity and thoroughness of the ongoing human resources investigation against him *and* that he had never previously complained about other disproportionate treatment because such complaints often led to forced terminations or retirements for older or non-Caucasian employees of Defendant.

31. Even Plaintiff's African American supervisor, Kevin Stiner, twice told Plaintiff that because Plaintiff was a non-Caucasian employee, Plaintiff would need to perform his "job bigger and better" than his Caucasian counterparts.

32. During this call, Plaintiff also complained he had been subjected to a hostile work environment based on his religion – Roman Catholic – and recounted various instances during company Webex conference calls where he was subjected to harassment based on his faith as well

as concerns that many of the "sexual harassment" allegations against him were laced with demonstratively "anti-Catholic" sentiments by an employee with whom Plaintiff had multiple conversations regarding his and/or her Protestant faith.

33. More specifically, Plaintiff identified two separate WebEx conference calls in March 2021 during which he was ridiculed for being "very religious." In the first, Plaintiff was told to "shut up" and was laughed at when he suggested it was inappropriate for his supervisor to be complaining about the cost of his home improvement projects during a time where so many had lost their jobs or lives due to the COVID-19 pandemic. In the second, Plaintiff's direct supervisors were making fun of Catholic Mass and certain Roman Catholic Sacraments.

34. Regarding the anti-Catholic bias of the employee who falsely accused Plaintiff of "sexual harassment," part of the employee's complaint was that Plaintiff "inappropriately" interjected his faith into the workplace, despite the fact that the accusing employee had frequently asked Plaintiff to say a prayer before they had meals together.

35. Such allegations were particularly jarring to Plaintiff because in one of the alleged instances, the employee confided in Plaintiff that she had been struggling in her job duties following a miscarriage. During this conversation, Plaintiff attempted to console the employee by explaining the concept of "fetal micro chimerism" – a biological process resulting from pregnancy, including miscarried pregnancies, in which fetal cells remain as a part of the cellular makeup of the mother.

36. In another instance, the accusing employee and her husband had dinner with Plaintiff and during the dinner, the accusing employee's husband, a Protestant who taught at a private religions school, asked Plaintiff about Roman Catholic's "worshipping" Jesus' mother, Mary. Plaintiff subsequently had what he believed to be a calm and reasoned conversation with

the employee and her husband regarding the concept of "worship" versus the reverence Catholics around the world share for Mary.

37. Two days later, Plaintiff's employment was unlawfully terminated by his supervisors Kevin Stiner and Bill Doran.

38. During his July 8, 2021, termination meeting, Plaintiff once again expressed concerns that he was being subjected to unlawful discrimination based on his age, religion, and national origin.

39. Plaintiff also questioned his supervisor regarding why he was not being offered the one-year "severance package" that was offered to a similar situated Caucasian employee who had been fired around the same time as Plaintiff.

40. More specifically, the similarly situated Caucasian employee was forced to retire after the employee made a number of inappropriate comments in the workplace.

41. Plaintiff's supervisor, Bill Doran immediately tried to distinguish my forced retirement from the other employees on the grounds that we worked in different divisions, *i.e.*, Plaintiff and his team sold surgical supplies for cataracts while the other employee and his team sold retina surgical supplies.

42. This is a distinction without a difference. The surgical division for both retina and cataract supplies shared the same General Manager and Human Resources Business Partner.

43. Further, as Plaintiff discussed various "housekeeping" issues associated with the termination of his employment, including how he would be able to submit miles driven for reimbursement without the use of his former company computer, Plaintiff's supervisors, Mr. Stiner and Mr. Doran, dismissed Plaintiff's concerns about not having access to his internal records,

noting that "no one actually tracks their miles" and that Plaintiff should simply falsify his miles report like Defendant's other sales employees.

44. Notably, Plaintiff had just been terminated for allegedly "falsifying" field coaching reports.

45. Prior to and including his wrongful termination, Plaintiff experienced a pattern and practice of disparate treatment in the terms and conditions of his employment based on age, and/or national origin, and/or religion, and/or retaliation by Defendant and its managers and employees including but not limited to false allegations of harassment, a sham human resources investigation, and his wrongful termination, without any legitimate reason and in violation of the law.

46. These adverse actions were also motivated in whole or in part due to Plaintiff's report to Defendant's human resources department of discriminatory conduct against Plaintiff.

47. These adverse actions were taken without any legitimate reason and in violation of the law, and less-qualified, younger, Caucasian employees who had not complained about or reported discrimination were treated more favorably.

48. The true reasons for the discriminatory and retaliatory employment actions of Defendant against Plaintiff, including but not limited to those adverse employment actions set forth above, were illegal age, religion, national origin discrimination and/or for reporting concerns about illegal discrimination and retaliation.

49. On December 15, 2021, Plaintiff filed a timely charge alleging age, religion, and race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and Kansas Human Rights Commission. Plaintiff subsequently amended his charge to include a claim of national origin discrimination.

50. On or about June 9, 2022, the EEOC mailed a Notice of Right to Sue to Plaintiff (copy attached as **Exhibit A**).

51. This case has been filed within 90 days after Plaintiff received the Notice of Right to Sue from the EEOC.

52. Plaintiff has met all deadlines and has satisfied all administrative prerequisites to filing suit.

## COUNT I – NATIONAL ORIGIN DISCRIMINATION (TITLE VII)

53. Plaintiff incorporates by reference the allegations of paragraphs 1 through 52 above.

54. Plaintiff's nation origin was a motivating factor in Defendant's intentional decisions to subject him to disparate treatment in the terms and conditions of his employment in the form of a discriminatory work environment, false allegations of sexual harassment, a sham human resources investigation, and his forced, involuntary termination (actual and/or constructive) due to his national origin, age, religion and/or retaliation by Defendant and its officers and managers, including but not limited to Plaintiff's direct supervisors.

55. Defendant manifested its illegal bias through a human resources investigation that unfairly targeted Plaintiff for field-coaching report conduct that was commonplace among Plaintiff's similarly situated younger, Caucasian employees. Such investigation ultimately led to the termination of Plaintiff's employment, while similarly situated male employees were treated more favorably and not subjected to the same type of illegal treatment.

56. Defendant has a pattern and practice of national origin discrimination including as set forth previously herein.

57. The discriminatory actions of Defendant detrimentally affected Plaintiff in the terms and conditions of his employment with Defendant.

58. Plaintiff complained about these discriminatory actions to Defendant's human resources department and requested that the discrimination cease.

59. Defendant knew, or should have known, of the national origin discrimination against its employees, including Plaintiff.

60. Defendant failed to take prompt and appropriate corrective action to end the national origin discrimination against its employees, including Plaintiff.

61. Defendant failed to make good faith efforts to enforce its policies to prevent national origin discrimination against its employees, including Plaintiff.

62. Defendant's conduct was outrageous as it maliciously or recklessly violated Plaintiff's rights under Title VII and is sufficiently culpable to warrant an award of punitive damages.

63. As a direct result of Defendant's illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to his reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count I, including but not limited to his lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems

just and proper.

## COUNT II – RELIGIOUS DISCRIMINATION (TITLE VII)

64. Plaintiff incorporates by reference the allegations of paragraphs 1 through 63 above.

65. Plaintiff's religion subjected him to disparate treatment in the terms and conditions of his employment in the form of a hostile work environment in which his faith made Plaintiff the target of ridicule and false allegations of "sexual harassment" by Defendant and its officers, managers, and employees, including but not limited to Plaintiff's direct supervisors.

66. Defendant has a pattern and practice of religious discrimination and harassment including as set forth previously herein.

67. The harassing actions of Defendant detrimentally affected Plaintiff in the terms and conditions of his employment with Defendant.

68. Plaintiff complained about these harassing actions to Defendant's human resources department and requested that the harassment cease.

69. Defendant knew, or should have known, of the religious discrimination against its employees, including Plaintiff.

70. Defendant failed to take prompt and appropriate corrective action to end the religious harassment against its employees, including Plaintiff.

71. Defendant failed to make good faith efforts to enforce its policies to prevent religious harassment against its employees, including Plaintiff.

72. Defendant's conduct was outrageous as it maliciously or recklessly violated Plaintiff's rights under Title VII and is sufficiently culpable to warrant an award of punitive damages.

73. As a direct result of Defendant's illegal and harassing actions, Plaintiff has sustained damages in the form emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to his reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count II, including but not limited to his damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT III – RETALIATION (TITLE VII)

74. Plaintiff incorporates by reference the allegations of paragraphs 1 through 73 above.

75. Plaintiff had a good faith, reasonable belief that he was being subjected to unlawful employment practices including disparate treatment by Defendant on the basis of his national origin and religion in the terms and conditions of his employment compared with similarly situated, younger, Caucasian employees and he reported the same to Defendant.

76. Defendant retaliated against Plaintiff because of his opposition to unlawful employment practices and/or his participation in protected EEO investigation activities by subjecting him to false allegations of sexual harassment, a sham human resources investigation, a discriminatory, hostile work environment, and Plaintiff's forced, involuntary termination for false, pre-textual reasons.

77. Plaintiff's opposition to unlawful employment practices and/or his participation in protected activities was a motivating factor in Defendant's decision to subject him to adverse

employment actions including the adverse actions described herein, including the termination of his employment and other prior and subsequent adverse job actions as set forth herein.

78. Defendant's conduct was willful and/or outrageous as it intentionally and knowingly violated Plaintiff's rights under Title VII and is sufficient therefore to warrant an award of punitive damages.

79. As a direct result of Defendant's illegal and retaliatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to his reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count II, and requests an award of his actual damages, including but not limited to his lost wages and benefits, with interest, through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT IV – AGE DISCRIMINATION (ADEA)

80. Plaintiff incorporates by reference the allegations of paragraphs 1 through 79 above.

81. Plaintiff's age was a determining factor in Defendant's intentional decisions to discriminate against him in the terms and conditions of his employment as set forth above, including but not limited to a discriminatory, hostile work environment, false allegations of "sexual harassment," a sham human resources investigation, and his forced, involuntary termination due

to his age and/or retaliation by Defendant and its officers and managers, including but not limited to Plaintiff's direct supervisor and replacing Plaintiff with younger, less-qualified employees.

82. Defendant manifested its illegal age bias through age biased actions as set forth above and herein, including but not limited to a sham human resources investigation and other adverse actions impacting the terms and conditions of his employment including his termination, while similarly situated, substantially younger employees were treated more favorably and not subjected to the same type of hostile and discriminatory actions or termination.

83. Defendant knew, or should have known, of the age discrimination against its employees, including Plaintiff.

84. Defendant failed to take prompt and appropriate corrective action to end the age discrimination against its employees, including Plaintiff.

85. Defendant failed to make good faith efforts to enforce its policies to prevent age discrimination against its employees, including Plaintiff.

86. Defendant's conduct was knowing, willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the ADEA, thus justifying an award of liquidated damages.

87. As a direct result of Defendant's illegal and discriminatory actions, Plaintiff has sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to his reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count IV, and requests an award of his actual damages, including but not limited to his lost wages and benefits, with interest through the date of trial, damages for future loss of wages and benefits,

liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## COUNT V – RETALIATION (ADEA)

88. Plaintiff incorporates by reference the allegations of paragraphs 1 through 87 above.

89. Plaintiff had a good faith, reasonable belief that he was being subjected to unlawful employment practices including disparate treatment by Defendant on the basis of his age in the terms and conditions of his employment compared with similarly situated, substantially younger employees, and he reported the same to Defendant.

90. Defendant retaliated against Plaintiff because of his opposition to unlawful discriminatory employment practices including by subjecting him to a discriminatory, hostile work environment, a sham human resources investigation, and his forced, involuntary termination (actual and/or constructive) due to his age for false, pre-textual reasons and other prior and subsequent adverse actions as set forth above herein.

91. Plaintiff's opposition to unlawful discriminatory employment practices was a determining factor in Defendant's decision to subject him to adverse employment actions including those actions set forth above and herein and including the termination of his employment.

92. Defendant's conduct was knowing, willful and/or outrageous as it intentionally and knowingly violated Plaintiff's rights under the ADEA and is sufficient therefore to warrant an award of liquidated damages.

93. As a direct result of Defendant's illegal and retaliatory actions, Plaintiff has

sustained damages in the form of lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to his reputation, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant on Count V, and requests an award of his actual damages, including but not limited to his lost wages and benefits, with interest, through the date of trial, damages for future loss of wages and benefits, liquidated damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to reinstatement, and any such other relief as the Court deems just and proper.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the trial site for this case.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in Counts I - V.

Respectfully submitted,

**SEACORD LAW LLC**

*/s/ Nickalaus Seacord*
Nickalaus Seacord, Mo. Bar # 63232
1308 NE Windsor Drive
Lee's Summit, MO  64086
(T) 816.514.0414
nick@seacordlaw.com

*Attorney for Plaintiff Gregory Sanchez*