## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GREGORY SANCHEZ,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:22-CV-2336-JAR** |
| **ALCON VISION, LLC,** | |
| **Defendant.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Gregory Sanchez brings this action against his former employer, Defendant

Alcon Vision, LLC, asserting claims under Title VII of the Civil Rights Act of 1964 ("Title

VII")[1] and the Age Discrimination in Employment Act ("ADEA").[2]  Plaintiff alleges that he was

discriminated against because of his age and national origin, and that he was retaliated against

for reporting this discrimination.  This matter is before the Court on Defendant's Motion for

Summary Judgment (Doc. 44).  The motion has been fully briefed, and the Court is prepared to

rule.  As explained more fully below, the Court grants the motion.

## I.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3]  In

applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party.[4]  "There is no genuine issue of material fact

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] 29 U.S.C. § 621, *et seq.*

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[4] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[9]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[11]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]  The facts "must be identified by reference

---

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[10] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[11] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

## II.    Uncontroverted Facts

The following material facts are uncontroverted, stipulated to for the purposes of summary judgment, or viewed in the light most favorable to Plaintiff.

Defendant hired Plaintiff on January 28, 2011, when Plaintiff was 52 years old.[15]  From that time, until Plaintiff resigned on July 8, 2021, Plaintiff worked as either a Division Manager or a Senior Division Manager.  At all times relevant to this suit, Plaintiff was a Senior Division Manager.[16]  In that role, Plaintiff supervised a team of Account Managers ("AMs").  Plaintiff coached the AMs who reported to him, and occasionally traveled with them on field visits to assess their performance with clients.  Plaintiff was expected to prepare Field Coaching Reports ("FCRs") for each of the AMs under his supervision.  These FCRs served to document Plaintiff's observations during the field visits, including how effectively each AM was promoting Defendant's products and interacting with clients.  Plaintiff was expected to provide each AM with two FCRs per year.  Defendant has no policy explicitly prohibiting the falsification of, or inclusion of inaccurate information in, FCRs.

---

[13] *Adams*, 233 F.3d at 1246.

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[15] From 2011 to April 2019, Defendant was fully owned by Novartis.  Defendant spun off from Novartis on April 9, 2019.

[16] The parties disagree on the exact date that Plaintiff became a Senior Division Manager, but it is uncontroverted that Plaintiff was working as a Senior Division Manager since at least 2016.  *See* Doc. 45 at 6 ("Account Manager Courtney Nikkel reported directly to Plaintiff from 2016 until her resignation from employment in 2021.").  Other than Plaintiff's date of hire, there are no material factual allegations earlier than 2016.  Thus, at all relevant times to this lawsuit, Plaintiff was employed as a Senior Division Manager.

Courtney Nikkel is a former AM who reported directly to Plaintiff from 2016 until her resignation in April, 2021.  On April 14, 2021, Human Resources Business Partner Carita Peden conducted an exit interview with Nikkel.  At this exit interview, Nikkel told Peden that Plaintiff had engaged in misconduct.  Relevant here, Nikkel stated that Plaintiff falsified her FCRs. Nikkel alleged that Plaintiff filled out FCRs as if he was present during client visits, but that he had not accompanied her on certain visits.  Nikkel offered evidence to support her allegation of FCR falsification, including copies of FCRs and text messages between her and Plaintiff.

The following day, Peden contacted the Alcon Ethics Helpline ("AEH") to report the allegations Nikkel raised against Plaintiff.  The AEH is responsible for investigating complaints of potential misconduct involving Defendant's employees.  The AEH opened Case 2-21-4-1080 to investigate the matter, and assigned Regional Security Director Erin Haydu to conduct the investigation.  Haydu's role as investigator was to gather facts and prepare an independent review based on those facts.  Haydu interviewed Nikkel and ten of Defendant's employees, including Plaintiff and other AMs who reported to Plaintiff.  Haydu also reviewed relevant FCRs and text messages between Plaintiff and Nikkel.

Nikkel reported that Plaintiff did not accompany her on a client visit to the Wolfe Clinic, on or about October 2018.  In the FCR Plaintiff prepared about that visit, he stated, "we went to Wolfe Clinic" twice, but text messages between Plaintiff and Nikkel showed that Plaintiff was at a hotel during the time that the FCR claimed he was with Nikkel at the Wolfe Clinic.  Another AM who reported directly to Plaintiff, Kirk Winder, told Haydu that Plaintiff did the same thing on one of his field visits.  Specifically, Winder stated that Plaintiff prepared an FCR that indicated that Plaintiff accompanied Winder to a client in Sioux Falls, South Dakota, but Plaintiff did not accompany Winder on that visit.  Another AM who reported directly to Plaintiff, Luke

Jackson, also told Haydu that Plaintiff included inaccurate information in his FCRs.  When Haydu interviewed Plaintiff about these allegations, he confirmed that he had not been present for the visits to the Wolfe Clinic with Nikkel.  Plaintiff does not dispute that he included inaccurate information in multiple FCRs.

Based on her witness interviews, and on Plaintiff's admission of including inaccurate information in FCRs, Haydu determined that Plaintiff had falsified the content of FCRs on multiple occasions.  In Haydu's investigation report, she noted that the allegation that Plaintiff falsified FCRs was substantiated.  Haydu submitted her report to the AEH, and it was independently reviewed by three of Plaintiff's bosses—Kevin Stiner, Bill Doran, and Jim Di Filippo.[17]  All three men independently determined that Plaintiff's employment should be terminated based upon the investigative finding that Plaintiff had falsified FCRs.

Defendant's Internal Review Committee ("IRC") reviews all investigative findings for reports that could lead to termination.  Defendant's business leaders have no authority to terminate employees for misconduct unless the IRC is aligned with the decision.  If the IRC determines that the subject of an investigation should be terminated, the IRC meets with the appropriate business leaders to align on a final decision, but the business leaders cannot overrule the IRC.

Duane Stumpf and Beverly Rouse have been standing members of the IRC since Defendant spun off from Novartis on April 9, 2019, and both served on the Alcon Division Review Team ("DRT") before the separation from Novartis.  Stumpf was a standing member of the DRT since November 2012, and Rouse was a standing member of the DRT since February

---

[17] From 2020 through Plaintiff's resignation in July 2021, Stiner was Plaintiff's supervisor.  During this time, Doran was Stiner's supervisor, and Di Filippo was Doran's supervisor.

2016.  During the time Rouse and Stumpf served on the DRT and IRC, Plaintiff was the only one of Defendant's employees who was found to have falsified an FCR.  Specifically, between July 8, 2018 and July 8, 2021, none of Defendant's employees who are similarly situated to Plaintiff have been found to have falsified FCRs or any other internal documents.

Stumpf and Rouse reviewed Haydu's report independently, on or about July 1, 2021. Stumpf and Rouse both determined that Plaintiff's employment should be terminated based on the finding that Plaintiff falsified FCRs.  On July 2, 2021, Stiner and Doran met with the IRC, and Defendant's attorney, to discuss Haydu's report.  At this meeting, a decision was made to

terminate Plaintiff's employment.[18]  This termination decision was final and not subject to

change.[19]

On July 7, 2021, Stiner called Plaintiff to tell him that Stiner and Doran would be

traveling to Kansas City to meet with him the following morning.  At the time of this call,

Plaintiff knew he was the subject of an investigation.  That same day, after the call with Stiner,

Plaintiff called the AEH.  At the time of his call to the AEH, Plaintiff had already surmised that

he would be separated from his employment the following day.  Plaintiff reported to the AEH

that he had suffered discrimination based on his age, religion, and race or ethnic national origin.

---

[18] Details of what was discussed during this meeting have not been introduced into evidence, as Defendant had an attorney present and has since asserted attorney/client privilege.  But the only material, disputed fact about this meeting is whether the termination decision was made during the meeting.  Defendant supports its assertion that the decision was made at this meeting with declarations from Stiner, Doran, Stumpf, and Rouse, all of whom have personal knowledge of the meeting because they were present.

Plaintiff attempts to controvert this fact by asserting that any claims about the IRC's decision-making process cannot be presented in a form that would be admissible in evidence.  Plaintiff asserts that, in his depositions of Stiner and Doran, he was prevented from asking any questions about the decision-making process at the July 2 meeting.  Thus, Plaintiff asserts that it would violate Fed. R. Evid. 403 to permit Defendant to submit "self-serving declarations of the purpose and intent of the IRC" after preventing discovery on the same.  Doc. 53 at 39.

Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Plaintiff argues that the Court's reliance on Defendant's evidence would violate this rule by causing unfair prejudice and confusing the issues.  Plaintiff's evidentiary objection is not well-founded.  Plaintiff's complaint about being unable to question deponents as to the *substance* of the conversations at this meeting does not controvert the evidence that the *decision* was made at that meeting.  Nor does Plaintiff offer evidence that he sought to depose the other decision-makers at the meeting—such as Rouse and Stumpf.  Plaintiff also did not file an objection while the discovery period was open, or challenge Defendant's assertion of attorney/client privilege during the depositions.

Notably, Plaintiff offers no evidence (or allegation) that the termination decision was made at any other time.  And the record evidence supports Defendant's assertion that the decision was made on July 2.  It is uncontroverted that Stiner and Doran have no authority to terminate an employee for misconduct unless the IRC aligns on the decision.  Thus, they must have received such authority from the IRC in advance of their July 8 meeting with Plaintiff, where they told Plaintiff that he would be terminated if he did not resign.  The only evidence in the record of a meeting or conversation between the IRC, Stiner, and Doran, is the July 2 meeting.  There is no allegation that the IRC met with, or spoke to, Stiner or Doran at any time between the July 2 meeting and the meeting with Plaintiff on July 8.  The only reasonable conclusion from the evidence in the record is that the IRC aligned with Stiner and Doran on the decision to terminate Plaintiff on July 2.  Thus, the Court finds that the probative value of Defendant's evidence outweighs any danger of prejudice or risk of confusing the issues.  Plaintiff's attempt to controvert this fact fails and is admitted as uncontroverted.

[19] Notably, though Plaintiff attempted to controvert the fact that the decision was made on July 2, 2021, he did not controvert the fact that "[t]his termination decision was final and not subject to change."  *See* Doc. 45 at 16; Doc. 53 at 14–15.

The following day, on July 8, 2021, Stiner and Doran met with Plaintiff in Kansas City and told him that Defendant would not continue his employment.  Stiner and Doran told Plaintiff that this decision was based on the results of the investigation, which substantiated the allegation that Plaintiff falsified FCRs.  Stiner and Doran told Plaintiff that July 8, 2021 would be his last day of employment, and provided him with the option of resigning in lieu of termination. Plaintiff chose to resign, and thus, was able to receive retirement benefits.  Plaintiff was 63 years old at the time of his resignation.  Defendant replaced Plaintiff with Adam Jones, who is substantially younger than Plaintiff.[20]

The AEH opened Case 2021-7-1210 to investigate Plaintiff's allegations from his July 7, 2021 call.  The AEH assigned Regional Employee Relations Business Partner Jessica Cuellar as investigator.  Over the course of a three-month investigation, Cuellar interviewed 13 employees, including Plaintiff.  Cuellar interviewed Plaintiff on July 14, 2021, and Plaintiff reported multiple allegations of discrimination and misconduct by other employees.  Regarding discrimination, Plaintiff told Cuellar that Stiner discriminated against him based on his race or national origin in a particular conversation between the two men.  Stiner, who is African-American, told Plaintiff that he has to work twice as hard as white people to be recognized for his work.  Plaintiff, who identifies as Latino, agreed with Stiner based on his own experience in the workforce.  Plaintiff reported that Stiner expressed surprise that Plaintiff, as a Latino person,

---

[20] Plaintiff supported his allegation that Jones is "substantially" younger that him with his own declaration. *See* Ex. 8.  Plaintiff's declaration states that Plaintiff first met Jones within a few years of beginning his employment with Defendant, that the two men became personal acquaintances, that Plaintiff learned about Jones' family and faith, and that, on the date of Plaintiff's termination, Jones was 39 years old (approximately 23 years younger than Plaintiff).  Ex. 8 ¶¶ 28–34.  Defendant attempts to controvert this fact by claiming that it is unsupported, because the only evidence to support it is Plaintiff's declaration.  Defendant does not offer any contrary evidence, which is notable given that Defendant would presumably have easy access to Jones' age through employment records. Defendant fails to controvert this fact because Plaintiff's declaration is based on his personal knowledge and interaction with Jones over many years.  Thus, Plaintiff's declaration that Jones was 39 years old when Plaintiff was terminated is sufficient evidence to support the fact that Jones is substantially younger than Plaintiff.

felt he also had to work twice as hard.  Plaintiff also told Cuellar that Stiner discriminated against him based on his age by asking Plaintiff to provide him six months' notice before retiring, whenever Plaintiff decided to retire.[21]  Plaintiff told Cuellar that he did not report these incidents when they occurred because he feared retaliation.  Cuellar interviewed several employees, including Stiner, about these allegations, before determining that Plaintiff's allegations of discrimination were not substantiated.

Plaintiff also told Cuellar that David Becker and Todd Deneault falsified FCRs.  At that time, Becker was a Director of Regional Sales, and Deneault was a Senior Division Manager.  Becker had previously been employed as a Senior Division Manager, in which capacity he completed FCRs, but he had not held that role since June 2017.  Becker and Deneault are younger than Plaintiff and do not present as being of Mexican descent.[22]  Plaintiff told Cuellar that two current employees, Chuck Kerzner and Mike Cassidy, told Plaintiff that Becker and Deneault included false information in FCRs they prepared.  Plaintiff also named two former employees, Vern Keller and Neil Starr, as having information about Becker and Deneault's misconduct.  Cuellar interviewed Kerzner and Cassidy about Plaintiff's allegations, and they both denied knowledge of FCR falsification by anyone.  Cuellar determined that Becker did not have any responsibility for FCRs in his role, and had not had responsibility for FCRs since June

---

[21] There is no evidence that Stiner asked Plaintiff *when* Plaintiff planned to retire, but only asked for notice before Plaintiff retired.

[22] Plaintiff's factual allegation states that both men are younger than Plaintiff and not of Mexican descent.  Defendant does not controvert these assertions but objects that they lack foundation and are inadmissible hearsay.  Plaintiff supports these facts with his own declaration, which is based on his personal experience with both men over many years.  This is sufficient foundation for Plaintiff to state that they are younger than him.  However, Plaintiff's declaration does not affirmatively state that Becker and Deneault are not of Mexican descent, but rather only that they do not "present" as being of Mexican descent.  Ex. 8 ¶¶ 10, 17.  Thus, the Court alters the fact to align with Plaintiff's declaration.  Regarding admissibility, Plaintiff would presumably testify to these facts and thus make them admissible.

2017.  Thus, Cuellar determined that Plaintiff's allegations against Becker and Deneault were not substantiated, and she never interviewed Becker, Deneault, Keller, or Starr.

Plaintiff also reported to Cuellar that "various Alcon leaders under Doran's organization under-reported personal mileage usage"[23] of company cars.  Cuellar reviewed four employees' personal mileage reports for the period of November 2020 to July 2021—Plaintiff, Stiner, Becker, and Erin Payne (an AM who had reported to Plaintiff).  Payne is younger than Plaintiff and does not present as being of Mexican descent.  Cuellar noted that each employee's mileage reports varied month-to-month, but Payne had reported exactly 50 personal miles per month for nine consecutive months.  Cuellar interviewed Payne about this finding, and Payne admitted that she approximated her personal mileage in her reports.  Cuellar included the finding that Payne reported exactly 50 miles per month for nine months in her investigation report of Plaintiff's allegations, but determined that Plaintiff's allegation that various leaders were "under-reporting" personal mileage was unsubstantiated.  Cuellar submitted the results of her investigation on the alleged discrimination, FCR falsification, and personal mileage under-reporting to the AEH.  In their declarations, Stumpf and Rouse state that they do not view the estimation of personal mileage as misconduct.

On December 3, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission.  Plaintiff alleged discrimination based on race, religion, and age, and alleged that he suffered retaliation.  Plaintiff's EEOC charge did not check the box for national origin discrimination, but the text of the charge alleged that he suffered discrimination because he was of Mexican descent.  An EEOC staff member informed Plaintiff's attorney, by email, that the identifier of "Mexican"

---

[23] Doc. 53 at 25.

was not recognized by the EEOC as a race, but only as a national origin. The staff member informed Plaintiff's attorney that Plaintiff needed to amend his charge to identify a race within the recognized categories, or alter the charge to assert national origin discrimination. Plaintiff's attorney responded to this email, but did not explicitly confirm that Plaintiff intended to assert national origin discrimination and never filed an amended charge.[24]

## III.    Discussion

Plaintiff asserts four claims against Defendant: (1) national origin discrimination under Title VII; (2) retaliation under Title VII; (3) age discrimination under the ADEA; and (4) retaliation under the ADEA.[25] Below, the Court first articulates the burden-shifting standard that applies to each claim, and then analyzes each claim to determine whether there is a genuine dispute of material fact that precludes summary judgment. As explained in more detail below, the Court finds that Defendant is entitled to summary judgment on all of Plaintiff's claims. Thus, Defendant's motion is granted.

### A.    Burden-Shifting

Plaintiff attempts to prove his discrimination and retaliation claims by presenting circumstantial evidence of discrimination, which requires application of the familiar *McDonnell Douglas* burden-shifting framework.[26] This framework applies to Plaintiff's Title VII and ADEA claims alike.[27] Thus, for each of his claims, Plaintiff must first submit evidence from

---

[24] These emails are part of the administrative record equally available to Plaintiff and Defendant.

[25] Plaintiff initially asserted claims for religious discrimination and harassment as well, but he abandoned the claims in his response to Defendant's motion for summary judgment. *See* Doc. 53 at 29 ("Plaintiff will not pursue his claim for religious discrimination or harassment under Title VII.").

[26] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[27] *Lucero v. Sandia Corp.*, 495 F. App'x 903, 909 (10th Cir. 2012) (explaining that the *McDonnell Douglas* framework is "properly employed in analyzing [circumstantial] evidence under both Title VII and the ADEA." (citations omitted)).

which a reasonable jury could conclude that a prima facie case of discrimination or retaliation has been established.[28]  Defendant must then articulate a legitimate, nondiscriminatory reason for its action.[29]  If Defendant does so, the burden shifts back to Plaintiff to identify evidence from which a reasonable jury could conclude that the proffered reason is actually pretext designed to mask discrimination or retaliation.[30]  Although the burdens of production shift, the ultimate burden of persuading the trier of fact that Defendant intentionally discriminated or retaliated against Plaintiff remains at all times with Plaintiff.[31]

### B.    National Origin Discrimination

Plaintiff alleges that Defendant discriminated against him because he is of Mexican descent.  As supporting evidence, Plaintiff claims that other non-Mexican employees falsified FCRs without repercussions.  Defendant asserts that no similarly situated employee has been found to have falsified an FCR, and that Plaintiff cannot satisfy the prima facie case for national origin discrimination.  Below, the Court first takes up Defendant's failure-to-exhaust defense, and then proceeds to the merits.  The Court finds that Defendant is entitled to summary judgment on Plaintiff's national origin discrimination claim.

### 1.    Exhaustion

Defendant raises the affirmative defense that Plaintiff failed to exhaust administrative remedies because Plaintiff neglected to check the box for national origin discrimination in his EEOC charge.  Plaintiff checked the boxes for race, religion, age, and retaliation, but not for

---

[28] *McDonnell Douglas*, 411 U.S. at 802.

[29] *Id.*

[30] *Id.* at 804.

[31] *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010) ("Throughout the three-step process, '[t]he plaintiff . . . carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis.'" (alterations in original) (quoting *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005))).

national origin.  Plaintiff asserts that the text of the charge put Defendant on notice that Plaintiff was complaining of discrimination based on his identity as Mexican, as well as the email communications between Plaintiff's attorney and the EEOC staff member.

"A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."[32] The Tenth Circuit has explained that the "exhaustion requirement serves 'two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance.'"[33]  For these reasons, "a plaintiff's claim in court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[34]  However, the Tenth Circuit "liberally construe[s] the allegations in the EEOC charge,"[35] and focuses its analysis on whether the charge "contain[s] facts concerning the discriminatory and retaliatory actions underlying each claim."[36]

Here, Plaintiff's EEOC charge mistakenly alleged race discrimination, but the email communications made it clear that Plaintiff's assertion of discrimination based on his Mexican descent was cognizable only under a national origin charge.  Thus, Defendant was on notice of the possibility of a national origin claim based on the text of the charge.  Defendant was also on notice of the possibility of a national origin claim because of its own investigation into Plaintiff's allegations of discrimination, where Plaintiff similarly alleged discrimination due to his Mexican

---

[32] *Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 6997397, at *1 (10th Cir. Oct. 24, 2023) (quoting *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020)).

[33] *Id.* (quoting *Sanderson*, 976 F.3d at 1170).

[34] *Id.* (quoting *Sanderson*, 976 F.3d at 1170).

[35] *Id.*

[36] *Id.* (quoting *Smith v. Cheyenne Ret. Investors L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018)).

descent.  Plaintiff raised these arguments about notice in his opposition to Defendant's motion, and Defendant failed to respond to these arguments in its reply.  The Court finds that it is proper to liberally construe Plaintiff's EEOC charge.  Thus, Plaintiff exhausted his national origin claim.

### 2.  Analysis

#### a.  Prima Facie Case

Turning to the merits of Plaintiff's national origin discrimination claim, "under Title VII, it is an unlawful employment practice for an employer 'to discriminate against any individual . . . because of such individual's . . . national origin.'"[37]  "A prima facie case of discrimination requires the plaintiff to show: (1) that he is a member of a protected class, (2) that he suffered an adverse employment action, and (3) that the adverse employment action took place under circumstances giving rise to an inference of discrimination."[38]  Defendant does not challenge the first and second elements, but asserts that there is no evidence to justify an inference of discrimination in Defendant's decision to terminate[39] Plaintiff's employment.  Plaintiff asserts that the Court should infer national origin discrimination because: (1) his misconduct was not serious; (2) Defendant has never terminated a similarly situated employee for FCR falsification;

---

[37] *Lucero v. Sandia Corp.*, 495 F. App'x 903, 908 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)) (further citations omitted).

[38] *Sidlo v. Millercoors, LLC*, 718 F. App'x 718, 727 (10th Cir. 2018) (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)).  The Tenth Circuit has occasionally used a different formulation of the prima facie case for discrimination under Title VII.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (omitting the "inference of discrimination" element and instead requiring proof that the plaintiff was qualified for the position and treated less favorably than others not in the protected class).  However, both formulations of the prima facie case analyze the same concern about whether there is reason to doubt the legitimacy of the adverse employment action.  And here, the parties agree on the prima facie case for Plaintiff's discrimination claims as the "inference of discrimination" test.  Thus, the Court employs the "inference of discrimination" test.

[39] The Court uses the phrase "terminate" interchangeably with "resignation" or "forced resignation."  Though Plaintiff was allowed to resign in lieu of termination, both parties regularly refer to Plaintiff's resignation as a termination, and the Court does the same.

(3) other Senior Division Managers who were not of Mexican descent also falsified FCRs; and (4) Plaintiff and his supervisor, Stiner, previously discussed how Black or Latino employees had to work twice as hard to be recognized at Alcon.  The Court finds that Plaintiff fails to establish a prima facie case for national origin discrimination.

Plaintiff offers one conversation that he asserts is supportive of national origin discrimination, during which he and Stiner discussed having to work twice as hard as white people because of their race or ethnicity.  Plaintiff construes this conversation as a rebuke of Defendant, claiming that he and Stiner were specifically complaining about Defendant.  But the deposition testimony for both Plaintiff and Stiner depicts a more general conversation about succeeding in the workforce as a person of color, or as a Latino person.[40]  Even if these general comments were meant to refer to Defendant, they are not sufficiently connected to Plaintiff's termination to raise an inference of discrimination.

Plaintiff also attempts to raise an inference of national origin discrimination by claiming that he did not know he could be terminated for providing inaccurate information in an FCR, and that there was no specific policy prohibiting such an offense.  Defendant responds that Plaintiff was terminated for falsifying an FCR, not for simply including inaccurate information in an FCR.  The Court notes that, regardless of the label,[41] there is no policy that speaks specifically to FCRs in the record.  However, the lack of a specific policy prohibiting Plaintiff's behavior does

---

[40] *See* Ex. 2, Pl. Dep. 161:16–162:18 ("[H]e made comments about because he's black that he has to work twice as hard as the white person to be recognized for . . . his work. . . . I said as a Latino, I feel the same way and he concurred."); Ex. 3, Stiner Dep. 90:15–21 ("The comment that I made, as he and I were having the conversation was the way I was brought up by my father, because I was African-American in this country, you—you are going to need to work twice as hard as your white counterparts in order to get ahead . . . .").

[41] Throughout his briefing, Plaintiff refers to his actions not as FCR falsification, but as the inclusion of inaccurate information in an FCR.  Plaintiff states numerous times that he had no intent to deceive anyone and did not intentionally do anything wrong.  However, even viewing the facts in the light most favorable to Plaintiff, there is no argument or evidence to support a finding that Plaintiff thought he was telling the *truth* when he reported that he accompanied AMs on visits that he did not attend.

not raise an inference of discrimination because it is evident why such an offense would be troublesome to Defendant.

The brunt of Plaintiff's argument is that he was terminated for conduct that others, who are not members of his protected class, were not disciplined for. Plaintiff raises the examples of Becker and Deneault, who he reported for falsifying FCRs but who were not disciplined. But Plaintiff does not demonstrate that he is similarly situated to Becker and Deneault. Among other things, "[i]ndividuals are considered 'similarly-situated' when they . . . have engaged in conduct of 'comparable seriousness.'"[42] Though Plaintiff *reported* that Becker and Deneault engaged in the same conduct that Plaintiff was terminated for—falsifying FCRs—Cuellar determined that Plaintiff's allegations against Becker and Deneault were not substantiated. Unsubstantiated allegations and substantiated allegations are not of comparable seriousness. Thus, Becker and Deneault are not similarly situated to Plaintiff.

In sum, Plaintiff has not demonstrated a prima facie case for national origin discrimination because he has not shown that he was terminated under circumstances that give rise to an inference of discrimination. However, out of an abundance of caution, the Court also considers the other prongs of the *McDonnell Douglas* test.

### b. Non-Discriminatory Reason

If Plaintiff satisfied his burden to establish the prima facie case for national origin discrimination, the burden would then shift to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. This burden "is not onerous."[43] When Defendant terminated Plaintiff, the stated reason was that an investigation had substantiated

---

[42] *PVNF, LLC*, 487 F.3d at 801 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

[43] *Dewitt v. Sw. Bell Tel. Co.*, 41 F. Supp. 3d 1012, 1018 (10th Cir. 2013) (citing *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999), *cert. denied*, 528 U.S. 814 (1999)).

Nikkel's allegation that he falsified FCRs.  In fact, three AMs who reported directly to Plaintiff confirmed that Plaintiff had falsified FCRs, and Plaintiff admitted to including false information in FCRs.  This justification, which on its face is legitimate and nondiscriminatory, satisfies Defendant's "'exceedingly light' burden."[44]

### c.    Pretext

The burden thus shifts back to Plaintiff to show that the proffered justification is pretextual.  "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief.'"[45]  In evaluating evidence of pretext, courts must "examine the facts as they appear[ed] to the [people] making the decision."[46]  The Court's task is not to "ask whether the employer's decision was 'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [it gave for its conduct] and acted in good faith on those beliefs.'"[47]

Plaintiff attempts to show pretext by alleging that his conduct was not serious, but Plaintiff's arguments about the severity of his misconduct do not support his claim of discrimination or of pretext.  Plaintiff does not point to any precedent supporting a finding that employers may only terminate employees for serious misconduct.  Whether Plaintiff thought his

---

[44] *Goodwin v. Gen. Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir. 2002) (quoting *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997)).

[45] *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (second alteration in original) (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1197 (10th Cir. 2008)).

[46] *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 543 (10th Cir. 2014) (second alteration in original) (quoting *E.E.O.C. v. C.R. Eng., Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011)).

[47] *Johnson*, 594 F.3d at 1211 (quoting *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)).

conduct was serious or not, the fact that he was terminated for falsifying FCRs does not support a finding of pretext for unlawful discrimination.

Plaintiff also argues that the absence of a formal policy prohibiting his actions supports a finding that his termination was pretextual, but there is "no basis for concluding that an otherwise reasonable justification by an employer should be deemed pretextual merely because it is not directly reinforced by an official rule or policy."[48]  The Tenth Circuit has called such logic "facially untenable" because it is "belied by countless employment discrimination cases decided on the basis of legitimate business justifications without any reference to formal policies necessarily legitimizing those justifications."[49]  Thus, the fact that there was no formal policy prohibiting the falsification of FCRs is not indicative of pretext.

Plaintiff also challenges the fairness and quality of Cuellar's investigation into his allegations of discrimination.[50]  Defendant argues that the post-termination investigation cannot support a finding of pretext because it is irrelevant to Plaintiff's termination.  The Court disagrees.  Cuellar's investigation is relevant because Plaintiff reported that other employees committed the same offense for which he was terminated.  Plaintiff raises two specific complaints about Cuellar's investigation: (1) Cuellar's decision not to interview certain people Plaintiff named as witnesses to Becker and Deneault's alleged misconduct; and (2) Cuellar's decision not to open a separate investigation into Payne's inaccurate mileage reports.

---

[48] *C.R. Eng., Inc.*, 644 F.3d at 1045; *see also Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1192–93 (10th Cir. 2010) (rejecting the argument "that an otherwise reasonable justification for a business decision somehow loses its legitimacy simply because it reflects an exercise of managerial judgment rather than a ministerial execution of written policy—as if a manager could not legitimately fire an employee for vandalizing property, stealing from co-workers, or assaulting a customer absent a formal company policy specifically addressing such misconduct.").

[49] *C.R. Eng., Inc.*, 644 F.3d at 1045 (quoting *Medlock*, 608 F.3d at 1193).

[50] Plaintiff does not challenge Haydu's investigation of his own offense, which is a common way plaintiffs attempt to establish pretext. *See Smothers*, 740 F.3d at 539 (explaining that "evidence the company failed to adequately investigate the offense for which it purportedly fired the plaintiff" supports a finding of pretext) (citations omitted).

Neither of Plaintiff's complaints about Cuellar's investigation indicate that there was a "failure to conduct what appeared to be a fair investigation."[51]  Plaintiff did not have first-hand knowledge that Becker and Deneault falsified FCRs, but instead reported that he heard about the misconduct from several others.  When Cuellar interviewed two of these witnesses, both witnesses unequivocally denied any knowledge of wrongdoing.  Because Plaintiff's complaint was based on second-hand information, it was not improper for Cuellar to stop the interviews after several of the named witnesses denied Plaintiff's allegations.  Nor is there any reason to doubt Cuellar's decision not to open an investigation into Payne's mileage reports.  Stumpf and Rouse both submitted declarations stating that they do not consider the estimation of mileage to be misconduct.  Regardless, Cuellar investigated the matter by obtaining Defendant's relevant policy, conducting interviews, and reviewing mileage reports.  She then included her findings in the report, such that if the AEH wished to take the matter further, it could have done so.

Finally, Plaintiff attempts to raise an inference of national origin discrimination by claiming that he was treated less favorably than Becker, Deneault, and Payne, who do not present as being of Mexican descent.  But Plaintiff fails to offer evidence of a single person who is similarly situated to him because there is no evidence in the record of any employee who committed an offense of "comparable seriousness."[52]  As described above, Cuellar determined that the allegations against Becker and Deneault were unsubstantiated, thus, neither of them are similarly situated to Plaintiff.  And the evidence in the record suggests only that Payne approximated her mileage, which is not misconduct.  Plaintiff has offered no evidence or

---

[51] *Smothers*, 740 F.3d at 542 (quoting *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008)).

[52] *Id.* at 541 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)).

argument sufficient for the Court to doubt whether Defendant acted in good faith by terminating Plaintiff based on a finding that he falsified FCRs.

The Court finds that Plaintiff fails to establish a prima facie case for national origin discrimination, and even if Plaintiff could make out a prima facie case, he fails to show that Defendant's legitimate reason for terminating him was pretext for unlawful discrimination. Thus, the Court grants Defendant's motion for summary judgment on Plaintiff's national origin discrimination claim.

### C.    Age Discrimination

"Under the Age Discrimination in Employment Act . . . , it is unlawful for an employer to 'discriminate against any individual . . . because of such individual's age,' if that individual is forty or older."[53]  To prove an age discrimination claim, a plaintiff must show that "age was a 'but-for' cause, or 'the factor that made a difference'" in the employer's adverse action.[54] Plaintiff asserts that Defendant forced him to retire because of his age, and alleges that similarly situated employees who were younger than him and who engaged in FCR falsification did not face the same repercussions.  Defendant asserts that Plaintiff's age did not factor into the decision to terminate him for falsifying FCRs, and that Plaintiff has no comparators.  The Court finds that Defendant is entitled to summary judgment on this claim.

### 1.    Prima Facie Case

Before setting forth the prima facie case, the Court must address the dispute between the parties about the applicable fourth element of the prime facie case.  The parties agree on the first

---

[53] *Lucero v. Sandia Corp.*, 495 F. App'x 903, 908 (10th Cir. 2012) (first quoting 29 U.S.C. § 623(a)(1), and then citing 29 U.S.C. § 631(a)).

[54] *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) (first quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009), and then quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010)).

three elements that Plaintiff must prove: (1) he is a member of the class protected by the ADEA;

(2) he suffered an adverse employment action; and (3) he was qualified for the position.[55]

Notably, Defendant does not challenge any of the first three elements; thus, the fourth element is

at issue.  Plaintiff asserts that the fourth element requires proof that he was replaced by a younger

person, and Defendant asserts that it requires proof that he was treated less favorably than others

not in the protected class.  The Tenth Circuit has recently used both variations of the fourth

element in its recitation of the prima facie case for age discrimination claims.[56]  The Tenth

Circuit has recognized these inconsistencies in dicta,[57] and it has explained that the prima facie

case elements "under the *McDonnell Douglas* framework are neither rigid nor mechanistic."[58]

Instead, the Tenth Circuit explained that "[t]he critical prima facie inquiry in all cases is whether

the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances

which give rise to an inference of unlawful discrimination.'"[59]

---

[55] *See Jones*, 617 F.3d at 1279 (quoting *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998), *abrogated on other grounds by Muldrow v. City of St. Louis*, 144 S.Ct. 967, 973–74 (2024)).

[56] *See Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1081 (10th Cir. 2023) (replaced with a younger person); *Delopez v. Bernalillo Pub. Schs.*, No. 21-2119, 2022 WL 17844509, at *4 (10th Cir. Dec. 22, 2022) (replaced with a younger person); *Stroup v. United Airlines, Inc.*, 26 F.4th 1147, 1160 n.9 (10th Cir. 2022) (less favorable treatment); *Roberts v. Winder*, 16 F.4th 1367, 1384 (10th Cir. 2021) (less favorable treatment).

[57] *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) ("[N]umerous decisions of this court indicate that a prima facie case may not require a 'similarly-situated person' comparison at all.  In particular, several cases involving adverse action prompted by unsatisfactory performance or misconduct have framed the relevant element much more broadly, as requiring a showing of 'circumstances giving rise to an inference of discrimination.'" (quotation and citations omitted)); *Kosak v. Catholic Health Initiatives of Colo.*, 400 F. App'x 363, 366 n.1 (10th Cir. 2010) (explaining that replacement by a younger person is an element of the prima facie case, but noting that the court has employed the less favorable treatment element in reduction-in-force cases, and "[w]hile a reduction-in-force is the most obvious example of the need for a different formulation of the fourth element of a prima facie claim, there may be other circumstances that similarly require the reformulation of that element." (citation omitted)).

[58] *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020) (quoting *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).

[59] *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 n.8 (10th Cir. 2007) (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)); *see also Adamson*, 514 F.3d at 1146; *Frappied*, 966 F.3d at 1056.

Both parties assert that their formulations of the fourth element are accurate, but recognize that the case law could support either version of the prima facie case. For the purposes of this Order, the Court adopts Plaintiff's prima facie test which requires him to demonstrate that he was replaced by a younger person.

Plaintiff was 63 years old at the time of his termination, and he was replaced by Adam Jones, who is substantially younger than him. Thus, Plaintiff satisfies the prima facie case for age discrimination, and the Court proceeds to consider the other prongs of the *McDonnell Douglas* test.[60]

### 2.     Pretext

As described in detail above, Defendant satisfies its burden of setting forth a legitimate, non-discriminatory reason for terminating Plaintiff. Thus, the Court proceeds to consider whether Plaintiff raises an inference that Defendant's non-discriminatory reason for termination is pretext for unlawful age discrimination.

Plaintiff argues that his termination was pretextual because no other similarly situated person has been terminated for falsifying FCRs. But Plaintiff does not introduce evidence of any person who is similarly situated to him, let alone a similarly situated person who was treated more favorably than him.[61] Plaintiff attempts to overcome this paucity of evidence by making accusations about Defendant's lack of cooperation in discovery, intimating that Defendant had examples of similarly situated employees who were treated differently but concealed them from

---

[60] The Court notes that, had it adopted Defendant's formulation of the prima facie case, Plaintiff would not be able to establish a prima facie case of age discrimination because he has not shown that he was treated less favorably than others. However, the Court will address Plaintiff's arguments about whether he was treated less favorably in the pretext analysis.

[61] As described in detail above, Becker and Deneault are not similarly situated to Plaintiff because the allegations against them were not substantiated. And Payne is not similarly situated to Plaintiff because she had a different job (she reported to Plaintiff), and she did not commit misconduct of comparable severity.

Plaintiff.  However, Plaintiff introduces no evidence to support this allegation.[62]  Rather, the evidence before the Court reflects that no similarly situated employee was found to have falsified FCRs for at least three years before Plaintiff's termination.  Thus, Plaintiff's assertion that his termination is unique does not suggest that it was pretext for discrimination, but only that no other employee committed the same misconduct.  Plaintiff bears the burden of showing that similarly situated employees were treated more favorably that him.[63]  Plaintiff does not satisfy his burden.

Plaintiff attempts to raise an inference of age discrimination by reiterating several arguments which the Court previously found unpersuasive in the context of his national origin discrimination claim.  Plaintiff asserts that his misconduct was not serious enough to justify terminating a ten-year employee, he notes that no official policy prohibits including inaccurate information in an FCR, and he claims that he did not know he could be fired for such action. Plaintiff also points to Stiner's allegedly discriminatory comment about retirement.

None of these arguments or allegations raise an inference of age discrimination.  Above, the Court rejected Plaintiff's arguments about the severity of his misconduct, his state of mind, and the assertion that Becker, Deneault, and Payne are similarly situated to him.  The only additional evidence Plaintiff offers of age discrimination is the benign question from Stiner about retirement.  The record shows that Stiner did not ask Plaintiff *when* he planned to retire, but

---

[62] The Court notes that there is no evidence that Plaintiff attempted to address these alleged discovery issues while the discovery period was open.

[63] *See Lucero v. Sandia Corp.*, 495 F. App'x 903, 911–12 (10th Cir. 2012).

instead Stiner only asked Plaintiff to give him six months' notice before he retires.  This trivial question fails to raise an inference of age discrimination.[64]

Notably, "[i]t is not the employer's burden to negate any possible contributory role played by age in the challenged adverse action but, conversely, the employee's burden to show that age was the 'but for' cause of the action."[65]  Here, Plaintiff fails to show that age played even a contributory role in his termination, and he falls far short of proving that his age was a but-for cause.  There is no indication that his termination was set into motion by anything other than Nikkel's exit interview.  Defendant had an obligation to investigate Nikkel's allegations, and Plaintiff himself substantiated the allegation of FCR falsification.  Plaintiff's argument, distilled down, is that a similarly situated person outside his protected class would not have been fired.  But Plaintiff does not produce sufficient evidence to create a genuine dispute of material fact that his age played any role in Defendant's decision to terminate him.

In sum, Plaintiff satisfies the prima facie case for age discrimination because he was replaced by a substantially younger person.  However, Plaintiff fails to raise an inference that Defendant's non-discriminatory reason for terminating him was pretext for age discrimination.  Thus, Defendant is entitled to summary judgment on this claim.

### D.    Retaliation Claims

It is unlawful under Title VII "for an employer to retaliate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter.'"[66]  The

---

[64] *See Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1197 (10th Cir. 2010) (describing a plaintiff's allegation about a conversation with a supervisor, which touched on retirement, as "a slender reed indeed on which to send a case to trial for discrimination.").

[65] *Id.* at 1193 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).

[66] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (alteration omitted) (quoting 42 U.S.C. § 2000e-3(a)).

ADEA similarly prohibits "discriminating against an employee who 'has opposed any practice made unlawful' by the statute."[67]  The Court considers Plaintiff's retaliation claims under Title VII and the ADEA together, as the prima facie elements are the same.[68]  As described in more detail below, Defendant is entitled to summary judgment on both of Plaintiff's retaliation claims.

### 1.    Prima Facie Case

To state a prima facie case for retaliation under Title VII or the ADEA, "a plaintiff must show '(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'"[69]  Whether a reasonable employee would have found an action materially adverse considers whether the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[70]  "To establish the requisite causal connection . . . [the plaintiff] must show that [the defendant] was motivated to terminate his employment by a desire to retaliate for his protected activity."[71]

Here, Defendant does not challenge the fact that Plaintiff's complaint to the AEH on July 7, 2021 constituted protected opposition to discrimination, or that Plaintiff's forced retirement on

---

[67] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008) (quoting 29 U.S.C. § 623(d)).

[68] *See Khalik*, 671 F.3d at 1193 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)) (Title VII); *Hinds*, 523 F.3d at 1202 (citation omitted) (ADEA).

[69] *Khalik*, 671 F.3d at 1193 (alteration omitted) (quoting *Twigg*, 659 F.3d at 998) (Title VII); *see also Hinds*, 523 F.3d at 1202 (citation omitted) (ADEA).  The parties both propose a prima facie case for retaliation that requires an adverse employment action, but the Supreme Court rejected that standard in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Instead, the standard now requires an action that a reasonable employee would find materially adverse.  *Id.*  The Tenth Circuit applies the same standard for ADEA retaliation claims.  *See Hinds*, 523 F.3d at 1202.

[70] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 n.2 (10th Cir. 2006) (quoting *Burlington N.*, 548 U.S. at 68).

[71] *Hinds*, 523 F.3d at 1203 (citing *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003)).

July 8, 2021 would be considered materially adverse by a reasonable employee.[72]  However, Defendant asserts that Plaintiff cannot prove causation because Defendant decided to fire him on July 2, 2021, *before* he filed a complaint of discrimination.  Plaintiff argues that the temporal proximity of one day between his complaint and his forced retirement is sufficient to demonstrate causation.  The Court finds that Plaintiff fails to demonstrate causation.

Ordinarily, a one-day gap between protected activity and termination would be strong evidence of retaliatory motive; such evidence would typically satisfy the causation element standing alone.[73]  However, the context of this case mandates against a rigid application of the general rule.  Plaintiff was terminated after a months-long investigation that substantiated allegations of misconduct.  Crucially, Plaintiff failed to controvert the fact that the termination decision was made on July 2, 2021, and that this decision was final and not subject to change.  This alone is sufficient to outweigh the ordinary presumption that temporal proximity satisfies causation, because though Plaintiff was forced to resign on July 8, the evidence shows that the final decision was made on July 2.  Plaintiff also failed to controvert the fact that, before he called the AEH to report discrimination on July 7, he had surmised that he would be separated from his employment the following day.  Thus, Plaintiff admitted that he knew, before engaging in protected activity, that Defendant planned to terminate him or separate him from his

---

[72] The Court notes that Plaintiff made references in the pretrial order to "sham human resources investigations" as adverse employment actions, in addition to his forced resignation.  *See* Doc. 43 at 15–16.  Defendant sought to rebut this argument in its motion, but Plaintiff did not raise it in his response.  Plaintiff relied only on his termination as an adverse action, and he focused his complaints about the investigations in his arguments for pretext.  Thus, the Court does not consider whether a "sham" investigation constitutes an action that a reasonable employee would find materially adverse.

[73] *See EEOC v. PVNF, LLC*, 487 F.3d 790, 804 (10th Cir. 2007) (noting that temporal proximity between protected activity and challenged adverse actions within a month is, alone, "sufficient to allow an inference of the existence of a causal connection between the two events." (citations omitted)); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007).

employment the next day.  The context here shows that the temporal proximity between Plaintiff's forced resignation and protected activity is insufficient to demonstrate causation.

Plaintiff offers no additional evidence or argument to support causation beyond temporal proximity.  Thus, Plaintiff fails to satisfy the prima facie case for retaliation under Title VII or the ADEA, and summary judgment is proper on these claims.  Nonetheless, out of an abundance of caution, the Court proceeds to consider the other prongs of the *McDonnell Douglas* test.

### 2.      Pretext

As described above, Defendant easily satisfies its burden to demonstrate a legitimate, non-discriminatory reason for terminating Plaintiff.  Thus, the Court proceeds to consider pretext.  Plaintiff makes no argument about pretext specifically, but he reiterates his objection under Fed. R. Evid. 403 that it would confuse the issue and be prejudicial to consider Defendant's evidence that the decision was made on July 2, 2021.  As explained in detail above, Plaintiff's evidentiary objection does not effectively controvert the fact that the decision was made on July 2, nor does Plaintiff establish that it would be unfairly prejudicial to consider the declarations of Stiner, Rouse, Doran, and Stumpf.

There is no evidence in the record to support a finding that the termination decision was based on, or connected in any way to, Plaintiff's complaint of discrimination.  Rather, the uncontroverted facts show that Duran, Stiner, Di Filippo, Rouse, and Stumpf each independently determined that falsifying FCRs warranted termination.  The decision-makers aligned on the decision on July 2, at which time the decision was final.  Duran and Stiner told Plaintiff on July 8 that they decided to terminate him because of the substantiated allegation that he falsified FCRs. There are no inconsistencies in these facts to justify an inference that Defendant's reason for terminating Plaintiff was pretext for unlawful retaliation.

Plaintiff fails to satisfy the prima facie case for retaliation under Title VII or the ADEA because he does not prove causation.  Even if Plaintiff did satisfy the prima facie case, he fails to show that Defendant's non-discriminatory reason for terminating him was pretext for unlawful retaliation.  Therefore, Defendant is entitled to summary judgment on both of Plaintiff's retaliation claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 44) is **granted**.

**IT IS SO ORDERED.**

Dated: May 15, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
